UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

BILLAY BENITEZ,

         *Plaintiff*,

    v.

UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES (USCIS); CHAD WOLF, ACTING SECRETARY, DEPARTMENT OF HOMELAND SECURITY; NEW YORK ASYLUM OFFICE, USCIS; KENNETH T. CUCCINELLI, ACTING DIRECTOR, USCIS; JENNIFER HIGGINS, ASSOCIATE DIRECTOR, REFUGEE, ASYLUM AND INTERNATIONAL OPERATIONS, USCIS; ANDREW DAVIDSON, ACTING CHIEF OF THE ASYLUM DIVISION, USCIS; MATTHEW D. EMRICH, ASSOCIATE DIRECTOR, FRAUD DETECTION AND NATIONAL SECURITY DIRECTORATE, USCIS; and PATRICIA MENGES, DIRECTOR, NEW YORK ASYLUM OFFICE, USCIS,

         *Defendants*

By ECF

Civil Action No. 19-cv-6457

Jury Trial Demanded

---

**COMPLAINT AND ACTION IN MANDAMUS**

## INTRODUCTION

1. For generations, the United States has been a haven for immigrants seeking opportunity and upward mobility. *See, e.g.,* John F. Kennedy, *Nation of Immigrants* (1958); Emma Lazarus, *The New Colossus* (1883) (welcoming "your tired, your poor, your huddled masses"). After the failures of the global community to protect refugees during World War II and the Holocaust, the United States and the international community recognized that "All human beings are born free and equal in dignity and rights" and that "Everyone has the right to seek and to enjoy in other countries asylum from persecution." The Universal Declaration of Human Rights (Dec. 10, 1948), Art. 1, 11.

2. Plaintiff Billay Benitez, ("Benitez") came to the United States to escape life-threatening persecution and obtain asylum. Benitez is a transgender woman who fled harassment, threats, and violence in Mexico. Benitez lives in constant fear of being sent back to Mexico, where she may be killed or attacked due to the prevalence of persecution of transgender people.

3. Benitez is not hiding in this country. She lawfully presented to the United States Citizenship and Immigration Service ("USCIS") her meritorious claim for asylum. Since then, USCIS has failed to comply with its duty to adjudicate her claim. Immigration and Nationality Act ("INA"), § 208(a), 8 U.S.C. § 1158(a). Instead, Benitez has waited more than two years without USCIS scheduling her asylum interview or adjudicating her claim for asylum, and there is no likely end in sight to her waiting for a chance to have her claim heard.

4. Under policies USCIS enacted in January 2018, USCIS placed Benitez's asylum application in de facto indefinite suspension and may never adjudicate her claim. Defendants

have, therefore, violated their non-discretionary, statutory duty to schedule her asylum interview and adjudicate her asylum claim.

5. USCIS' inaction has left Benitez in limbo, suffering uncertainty and an inability to settle into a stable and secure life.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over the claims asserted in this action pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1361, and 28 U.S.C. § 1651 because Benitez ask this Court to compel Defendants, officers of the United States, to perform their duty owed under INA § 208(d)(5)(A)(ii)-(iii), 8 U.S.C. § 1158(d)(5)(A)(ii)-(iii).

7. Jurisdiction is also conferred on this Court pursuant to 5 U.S.C. § 704 as Benitez is aggrieved by adverse agency action which this Court is authorized to remedy under the Administrative Procedures Act, 5 U.S.C. §§ 702 *et seq.*

8. The jurisdiction of this Court is also invoked pursuant to 28 U.S.C. §§ 2201-02 which authorizes the issuance of declaratory judgments.

9. Benitez seeks costs and fees pursuant to the Equal Access to Justice Act, 5 U.S.C. § 504 and 28 U.S.C. §§ 2412(2) *et seq.*

10. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(e) because this judicial district is where the Defendants, acting through the New York Asylum Office of the United States Citizenship and Immigration Services, have failed to take action required by law.

## THE PARTIES

11. Plaintiff Billay Benitez is a citizen of Mexico who currently lives in Staten Island, New York. Benitez submitted an Asylum Application to USCIS on December 30, 2016.

12. Defendant USCIS assigned Benitez's asylum application to the New York Asylum Office, which has yet to schedule her interview.

13. Defendant USCIS is an agency of the United States Department of Homeland Security ("DHS") charged with, *inter alia*, scheduling asylum interviews and adjudicating applications for asylum.

14. Defendant the New York Asylum Office, located at 1065 Stewart Avenue, Suite 200, in Bethpage, New York, is an office within USCIS and the federal agency with direct authority and responsibility to schedule Plaintiff's asylum interview and adjudicate her Asylum Application.

15. Defendant Chad Wolf is the acting Secretary of the DHS and oversees DHS. In his official capacity, he is charged with the administration and enforcement of the INA, has the authority to determine the refugee status of applicants pursuant to 8 U.S.C. § 1158(b)(1)(A), and is authorized to delegate such powers and authority to employees of DHS, including those of USCIS. *See* 8 U.S.C. § 1103(a)(1). Defendant Wolf is named in this complaint in his official capacity.

16. Defendant Kenneth T. Cuccinelli is the acting Director of USCIS, the Agency charged with scheduling Plaintiff's asylum interview and adjudicating Plaintiff's Asylum Application. Defendant Cuccinelli is named in his official capacity.

17. Defendant Jennifer Higgins is USCIS' Associate Director for Refugee, Asylum and International Operations. She has supervision over all asylum offices, including the New York Asylum Office. Ms. Higgins requires that some asylum applications be forwarded to headquarters before final adjudication. Defendant Higgins is named in her official capacity.

18. Defendant Andrew Davidson, upon information and belief, is the Acting Chief of the Asylum Division within USCIS. Defendant Davidson is named in his official capacity.

19. Defendant Matthew D. Emrich is USCIS' Associate Director of the Fraud Detection and National Security Directorate. He has supervision of all USCIS staff who review Asylum Applications to ensure that immigration benefits are not granted to individuals who pose a threat to national security or public safety, or who seek to defraud the immigration system. Certain applications must be reviewed by the Fraud Detection and National Security Directorate before their final adjudication. Defendant Emrich is named in his official capacity.

20. Defendant Patricia Menges is the Director of the New York Asylum Office, to which Plaintiff's asylum case has been assigned. Defendant Menges is named in her official capacity.

## FACTS

**A. Defendants Have a Statutory Duty to Process Plaintiff's Asylum Application**

21. Individuals who fear persecution in their countries of origin can affirmatively seek asylum in the United States. In order to do so, applicants must submit an Asylum Application to USCIS. After receiving the Asylum Application, USCIS is responsible for scheduling an asylum interview in order to process the Asylum Application. Under INA 208 § 1158(a), 8 U.S.C. § 1158(a), USCIS has a non-discretionary duty to adjudicate Plaintiff's asylum claim.

22. "[I]n the absence of exceptional circumstances, the initial interview or hearing on the asylum application ***shall*** commence ***not later than 45 days*** after the date an application is filed." Immigration and Nationality Act, INA 208 § 1158(d)(5)(A)(ii), 8 U.S.C. § 1158(d)(5)(A)(ii) (emphasis added). Following this interview, USCIS must issue a decision on the application. The relevant statute provides that, "in the absence of exceptional circumstances,

final administrative adjudication of the asylum application, not including administrative appeal, shall be completed within 180 days after the date an application is filed."  8 U.S.C. § 1158(d)(5)(A)(iii).

23. As set forth in greater detail below, Plaintiff Benitez fears persecution in her home country and has a meritorious claim for asylum.  She filed the requisite Asylum Application and a petition to expedite the scheduling of her interview but, at the time this Complaint was filed, USCIS had not scheduled her for an asylum interview despite USCIS' statutory duty and despite her having filed her application almost three years ago.

    **B.**    **Plaintiff's Meritorious Claim for Asylum**

24. Plaintiff Billay Benitez is a transgender woman who fled Mexico after experiencing persecution for being transgender and for being perceived as gay.  Individuals perceived to be gay face grave persecution in Mexico.  For transgender individuals, the daily harassment and danger they face is even greater.  Transgender Mexicans are at a high risk of being attacked, extorted, sexually assaulted and killed, and the Mexican police and government are unwilling and unable to protect them.  In view of the past persecution she has suffered and her knowledge of the persecution of other transgender Mexicans, Benitez has a well-founded fear that she will be persecuted on account of her membership in the social group of transgender Mexicans.

25. Benitez grew up with four siblings and her parents, but had always been rejected and ignored by her father from a young age, after expressing an interest in boys and femininity.  She also witnessed instances of domestic abuse by her father towards her mother, who often tried to protect her from his anger.  At age 9, her parents began to give her masculine hormones, which changed her appearance drastically and made her develop excessive facial hair and a deep voice.

She also experienced repeated instances of abuse from her oldest brother, who would beat her after he found out about her gender identity.

26. Within her community, Benitez would fear to go out due to torment from several neighbors that put her in great danger. One neighbor would chase her on his horse, trying to trample her, while shouting out slurs, and another neighbor, working as a minibus driver had ran over a gay man because of his sexual orientation. When Benitez confronted the driver about this, he told her that he would do the same to her if given the chance. In addition, other kids would often fight and taunt Benitez in school and some male teachers attempted to touch and flirt with her.

27. When Benitez's siblings began having children, she moved out of her hometown of Hermosillo to live with her aunt because the children were experiencing bullying because of her. At this time, she began to wear feminine clothes and change her appearance to conform to her female gender identity.

28. When living on the border, Benitez witnessed a girl being murdered with a baseball bat. The police never investigated the matter. Benitez was dating a man at this time who told her that she was not safe where they were and that she needed to flee to the United States to be safe.

29. Benitez sees a major difference in the treatment of LGBT people between the United States and Mexico. In Mexico, she would fear passing groups of men who taunted her and threatened to beat her up. She would be thrown out of women's bathrooms and only be allowed to use those for men while wearing women's clothing, such as skirts and high heels, which was embarrassing and humiliating. Benitez fears returning to Mexico due to the threat of her being beaten, raped or killed. There are no laws to protect transgender people, and Benitez faces an even greater risk of persecution now that her appearance has changed since she began hormone treatment.

30. Benitez filed a petition to expedite the scheduling of her asylum interview on November 13, 2019. There are no further administrative remedies available to Benitez to obtain an asylum interview. Her application has been pending for over two and a half years.

**C.    Defendants' Failure to Comply With Their Statutory Duty to Adjudicate Plaintiff's Asylum Claims Has Prejudiced Plaintiff By Leaving Her in Legal Limbo For Years**

31. Plaintiff affirmatively applied for asylum. Defendants' failure to schedule her asylum interview and adjudicate her asylum application has been very prejudicial. Plaintiff wants to live safely and build a permanent life in the United States, where she will be free from the persecution and threats to her lift that she faced in Mexico. However, having her claim for asylum unadjudicated makes it impossible for Plaintiff to make long-term plans for the future and leaves her in perpetual fear that she will be forced to return to Mexico.

32. Defendants' delay in adjudicating Plaintiff's claim is prejudicing Plaintiff's ability to obtain asylum. With the passage of years, Plaintiff's memories will fade, increasing the risk that she will forget details and give inconsistent testimony, and it will be harder to obtain evidence and witnesses to corroborate her claims.

**D.    Defendants Violated Their Duty to Schedule Plaintiff's Asylum Interview and Adjudicate Her Claim for Asylum**

33. In January 2018, USCIS adopted a last in, first out policy for scheduling asylum interviews. Under this policy, applicants are divided up into three pools. First priority applicants are those being rescheduled for interviews that were previously cancelled by either the applicant or USCIS. Second priority goes to new applications pending 21 days or less. Third priority goes to those in the "asylum backlog" who are waiting for interviews, starting with the most recently added applicant. (Ex. A, Affirmative Asylum Interview Scheduling website). Under these procedures, Defendants have effectively placed Plaintiff's asylum application in an indefinite

7

suspension, such that her claim may never be adjudicated. Moreover, under this policy, USCIS has clearly failed to perform their statutory non-discretionary duty to adjudicate Plaintiff's asylum claim.

34. Statistics released by USCIS illustrate that it will be nearly impossible for Plaintiff, and others in the backlog, to receive an interview. This is because applicants in the backlog will only be scheduled for an interview if all newly filed applications have already received interviews. But, based on publicly available information and on information and belief, every month USCIS conducts hundreds to thousands fewer asylum interviews than it receives in new applications. Thus, the number of applicants waiting in the backlog increases each month, and applicants are not being pulled from the backlog to receive interviews. For example, in January 2019, USCIS received or reopened 6,722 asylum applications, but held only 6,597 interviews and adjudicated 5,484 cases in total, yet further increasing the backlog. (Ex. B, Asylum Statistics for Jan. 2019 at 1). In March 2019, the most recent month for which USCIS published statistics, USCIS received 7,708 applications and reopened 97, but held only 5,641 interviews and adjudicated only 5,822 cases. (Ex. C, Asylum Statistics for March 2019 at 1). USCIS' most recent public statistics indicate that the total backlog of asylum cases across all asylum offices is 327,984, which is up from the backlog of 325,277 in January 2019 and from the backlog of 313,995 cases in January 2018, the month USCIS adopted the new policy. (Ex. C at 6, Ex. D, Asylum Statistics for January 2018). Of the 327,984 cases pending in March 2019, the New York Office alone accounted for 45,892. (Ex. C at 6). The backlog of asylum seekers in legal limbo remains enormous.

35. Defendants created a system where some new applicants are randomly selected to receive an interview immediately and have their claims adjudicated within weeks. Other new applicants and applicants who applied before the change in policy are arbitrarily placed in the

backlog indefinitely and, on information and belief, will not ever receive interviews under USCIS procedures. According to the American Immigration Lawyers Association, USCIS' policy "exacerbate[s] the asylum office backlog and leave[s] thousands of legitimate asylum seekers … in legal limbo indefinitely." (Ex. E, Feb. 2, 2018 AILA Practice Pointer).

36. Defendants' delay in processing the Benitez's Asylum Application is unreasonable. USCIS' arbitrary placement of Plaintiff in the backlog, while other applicants are randomly scheduled for near-immediate interviews, renders the delay even more unreasonable. Defendants' adoption of the last-in-first-out policy violates their duty to carry out the adjudicative and administrative functions delegated to them by law with regard to Plaintiff's claim and those of others in the backlog.

**COUNT ONE**
**(VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT)**

37. Plaintiff repeats and realleges the foregoing paragraphs as if fully set forth herein and incorporate them by reference.

38. Plaintiff has a statutory right to apply for asylum and to be considered for that relief pursuant to INA § 208(a), 8 U.S.C. § 1158(a). Defendants failed to perform this non-discretionary duty and, under Defendants' last-in-first-out policy, will continue to indefinitely delay performing this duty.

39. Plaintiff has no adequate remedy at law, and will suffer irreparable harm if Defendants do not promptly adjudicate her Asylum Application.

40. Under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(1), the Court is authorized to compel agency action which has been unreasonably delayed.

41. Defendants' delay in providing an interview to Plaintiff is unreasonable because:

(1) The delay is not governed by a "rule of reason."  Moreover, USCIS' decision to adopt a last-in-first-out policy and, thereby, deny adjudication to older filed applications represents a failure of reason.

(2) Congress has provided a statutory deadline of 45 days to schedule and 180 days for the adjudication of asylum claims.  INA § 208(d), 8 U.S.C. § 1158(d) Plaintiff has waited over two years for her claim to be adjudicated.

(3) The delay impacts every aspect of Plaintiff's life, hindering her ability to make permanent plans, move, and find long term employment.

(4) The delay here is especially intolerable because it impacts Plaintiff's health and welfare, as well as her economic interests.  Among the injuries Plaintiff has suffered are an inability to see and reunite with her family, an inability to find stable housing and employment due to her uncertain legal status, and the daily psychological trauma of not knowing if she can build a new life in the United States or if she will be sent back to Mexico where she will face a severe risk of persecution.

(5) Expediting the delayed adjudication would not impact Defendant agency USCIS' other priorities.  Plaintiff does not ask USCIS to devote greater capacity to adjudicating asylum claims; rather she asks the agency to use its existing capacity to adjudicate her Asylum Application in turn.

(6) Finally, Defendants' decision to adopt a last-in-first-out policy was arbitrary and capricious, and has had a disparate impact on Plaintiff's ability to obtain an adjudication of her Asylum Application in contrast to those whose applications have randomly received priority treatment.

42. Having diligently followed the procedures set forth by Defendants and exhausted all administrative remedies, Plaintiff seeks a court order compelling Defendants to schedule and adjudicate her Asylum Application pursuant to 5 U.S.C. § 706(1).

**COUNT TWO**
**(Administrative Procedure Act—Exceeds Statutory Authority)**

43. Plaintiff incorporates by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

44. Under the APA, courts must "hold unlawful and set aside agency action" that is "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(C). Defendants may only exercise authority conferred by statute. *City of Arlington v. FCC,* 569 U.S. 290, 297-98 (2013).

45. Defendants' last-in-first-out policy exceeds Defendants' statutory authority because it violates Plaintiff's statutory right to apply for asylum and to be considered for that relief pursuant to INA § 208(a), 8 U.S.C. § 1158(a) and the APA's requirement that Defendants' discharge this duty without unreasonable delay.

46. The last-in-first-out policy is therefore "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right," in violation of the APA. 5 U.S.C. § 706(2)(C).

47. Defendants' violation causes ongoing harm to Plaintiff

**COUNT THREE**
**(Administrative Procedure Act—Not in Accordance with Law)**

48. Plaintiff incorporates by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

49. Under the APA, a court must set "aside agency action" that is "not in accordance with law." 5 U.S.C. § 706(2)(A). Defendants' last-in-first-out policy exceeds Defendants' statutory authority because it violates Plaintiff's statutory right to apply for asylum and to be considered for that relief pursuant to INA § 208(a), 8 U.S.C. § 1158(a) and the APA's requirement that Defendants' discharge this duty without unreasonable delay.

50. The last-in-first-out policy is therefore "not in accordance with law" as required by the APA. 5 U.S.C. § 706(2)(A).

51. Defendants' violation causes ongoing harm to Plaintiff.

### COUNT FOUR
**(Administrative Procedure Act—Arbitrary and Capricious)**

52. Plaintiff incorporates by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

53. The APA provides that courts must "hold unlawful and set aside" agency action that is "arbitrary, capricious, [or] an abuse of discretion." 5 U.S.C. § 706(2)(A).

54. Defendants' last-in-first-out policy is arbitrary and capricious because they effectively created a lottery where some applicants arbitrarily receive an interview immediately and have their claims adjudicated within weeks. Others, such as Plaintiff, are arbitrarily placed in the backlog indefinitely and, on information and belief, will not ever receive interviews under USCIS procedures. According to the American Immigration Lawyers Association, USCIS' policy "exacerbate[s] the asylum office backlog and leave[s] thousands of legitimate asylum seekers … in legal limbo indefinitely." (Ex. E, Feb. 2, 2018 AILA Practice Pointer).

55. Defendants' last-in-first-out policy is therefore "arbitrary, capricious, [or] an abuse of discretion" in violation of the APA. 5 U.S.C. § 706(2)(A).

56. Defendants' violation causes ongoing harm to Plaintiff

# COUNT FIVE
## (MANDAMUS)

57. Plaintiff repeats and realleges the foregoing paragraphs as if fully set forth herein and incorporate them by reference.

58. Under the Mandamus Act, 28 U.S.C. § 1361, relief may be granted because Defendants owe Plaintiff a non-discretionary statutory duty and Plaintiff has exhausted all other avenues of relief.

59. Plaintiff has a statutory right to apply for asylum and to be considered for that relief pursuant to the Immigration and Nationality Act. INA § 208(a), 8 U.S.C. § 1158(a). Defendants have failed to perform their nondiscretionary duty.

60. Though USCIS has discretion in granting or denying applications, it has no discretion to decline to schedule interviews and to adjudicate Plaintiff's applications for asylum.

61. Aside from claims brought under the APA, *supra*, Plaintiff has no adequate remedy at law, and will suffer irreparable harm if her Asylum Application is not promptly adjudicated.

62. Having diligently followed the procedures set forth by Defendants and exhausted all administrative remedies, Plaintiff seeks a writ of mandamus or in the nature of mandamus to end Defendants' unreasonable delay and refusal to adjudicate her Asylum Applications.

63. Plaintiff requests a jury trial with respect to all claims so triable.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests the Court to:

a. Accept jurisdiction and maintain continuing jurisdiction of this action;

b. Declare Defendants' actions in this matter an abuse of discretion and not in accordance with the law pursuant to 5 U.S.C. § 706(1), 5 U.S.C. § 706(2)(C) and 28 U.S.C. §§ 2201-02;

c. Declare that Defendants' last-in-first-out policy is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law within the meaning of 5 U.S.C. § 706(2)(A);

d. Issue a preliminary and permanent injunction pursuant to 28 U.S.C. § 1361 and 5 U.S.C. § 706(1) compelling Defendants to schedule an asylum interview and make a determination on Plaintiff's I-589 Applications for Asylum and Withholding of Removal;

e. Issue a writ of mandamus or in the nature of mandamus, pursuant to 28 U.S.C. § 1361, 28 U.S.C. § 1651, and/or 5 U.S.C. § 706(1), compelling Defendants to schedule asylum interviews and make a determination on Plaintiff's I-589, Applications for Asylum and Withholding of Removal;

f. Grant attorneys' fees and costs of this suit under the Equal Access to Justice Act, 5 U.S.C. § 504 and 28 U.S.C. § 2412(2), *et seq.*; and

g. Grant such other relief as the Court deems necessary and proper.

Dated: November 15, 2019    KRAMER LEVIN NAFTALIS & FRANKEL LLP

        By:   Aaron M. Frankel
        Aaron M. Frankel
        Samantha Ford
        Cristina Martinez
        Samuel Brill (*pro hac vice* to be filed)
        KRAMER LEVIN NAFTALIS & FRANKEL LLP
        1177 Avenue of the Americas
        New York, New York 10036
        Telephone: (212) 715-9100
        Facsimile: (212) 715-8000
        afrankel@kramerlevin.com
        sford@kramerlevin.com
        cmartinez@kramerlevin.com
        sbrill@kramerlevin.com

        Edward Josephson
        Kinjal Patel (*pro hac vice* to be filed)
        Rex Chen
        Rosanna Eugenio (*pro hac vice* to be filed)
        LEGAL SERVICES NYC
        40 Worth Street, Suite 606
        New York, NY 10013
        Telephone: 646-442-3600
        Facsimile: 718-448-2264
        ejosephson@lsnyc.org
        kpatel@lsnyc.org
        rexchen@lsnyc.org
        reugenio@lsnyc.org

        *Pro Bono Attorneys for Plaintiff*